FILED
2018 Mar-02 PM 02:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| MARLON DOLLAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:16-cv-00014-SGC |
| | ) | |
| SOUTHLAND TUBE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The court has before it the April 28, 2017 motion for summary judgment filed by Defendant Southland Tube, Inc. ("SLT"). (Doc. 18). The motion was deemed submitted without oral argument as of June 27, 2017. After a thorough review of the briefs and evidence, the motion is due to be granted for the following reasons.

## I. STATEMENT OF FACTS

SLT is a nonunion steel tube manufacturer located in Birmingham, Alabama. (Doc. 20-3 at 2). Plaintiff began his employment with SLT on September 20, 1999, as a line coiler. (Doc. 20-1 at 17; Doc. 20-3 at 4). Plaintiff worked for several years in different positions within the mill and transferred to the maintenance department in August 2001. (Doc. 20-1 at 17-18). Plaintiff was

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

promoted to crew leader on October 5, 2006, and to third shift supervisor in August 2010. (*Id*. at 17; Doc. 20-3 at 4). Plaintiff and his crew[2] worked largely unsupervised on the third shift. (Doc. 20-1 at 19; Doc. 20-5 at 1; Doc. 20-6 at 2). Thomas Abney, the maintenance crew supervisor, was Plaintiff's supervisor from 2013 until Plaintiff was transferred to the first shift changeover crew in July 2015. (Doc. 20-6 at 2).

Plaintiff contends Abney sexually harassed him.[3] (Doc. 20-1 at 26, 36). Plaintiff testified that from early 2014 until July 2014, Abney made comments to him on a daily basis about the third-shift employees supervised by Plaintiff. (Doc. 20-1 at 26). Plaintiff stated Abney referred to Plaintiff and his crew as "girls," accused them of sexually gratifying each other, and routinely asked which one of the men on the crew was "the best". (*Id*.; Doc. 20-2 at 67). Specifically, Plaintiff alleges Abney made the following remarks:

- "Which is one of my best one [sic]? Which one knows who [sic] to pull on that thing? . . . Which one knows how [to] pull the head of that thing [and] get out every last drop? I bet Kyle Shellnutt, he is real thin and I bet he really knows how to pull on that thing and get the last drop out."
- "I think it is Justin who knows how to pull that thing and get every last drop";
- "I think Slim is your main squeeze, he can slurp that thing and get the last drop out."

[2] The crew was made up entirely of males. (Doc. at 4). There are no females in the maintenance department. (*Id*.). The only female employees of SLT work on the first shift in the front office. (*Id*.).

[3] Abney and Plaintiff are heterosexual males. (Doc. 20-1 at 26-28; Doc. 20-6 at 3).

(Doc. 20-2 at 67). Plaintiff contends Abney made these types of comments daily, stalked Plaintiff, leered at him, grinned, and waved. (*Id*.).

During this time, other employees asked if Plaintiff and his crew were "queers," and Plaintiff believes Abney started rumors about him. (*Id*. at 26, 38). Abney invited Plaintiff to drink alcohol and "moonshine" and attend "go-go" clubs with him, but Plaintiff refused these invitations. (*Id*. at 29). Plaintiff also testified Abney touched him and other employees on the shoulder between early 2014 and July 2014. (Doc. 20-1 at 36).

In early July 2014, during the time Abney was allegedly harassing Plaintiff, Abney discovered a break room used by Plaintiff and the third-shift maintenance crew in a leased building on adjoining property. (Doc. 20-6 at 2; Doc. 20-1 at 23-25). The break room contained tables, chairs, a radio, heater, coffee pot, microwave, dishes, and a poster of a woman in a bikini. (*Id*.; Doc. 20-2 at 48-50). Plaintiff was reprimanded for creating of the break room and not completing certain tasks and was instructed to dismantle the room.[4] (Doc. 20-6 at 2).

After the discovery of the break room, SLT concluded the third shift maintenance crew was doing very little during their shift and decided to eliminate maintenance on the third shift entirely. (Doc. 20-5 at 3; Doc. 20-6 at 2-3).

[4] Both Defendant and Plaintiff discuss in detail the creation of the break room and Plaintiff's resulting discipline. These facts are not material to Plaintiff's sexual harassment claim but merely provide necessary background.

Plaintiff was transferred to the first shift to a change-over crew. (Doc. 20-1 at 34; Doc. 20-3 at 5). The change-over crew was responsible for changing the settings in various mills for a new tube order after an order was completed. (Doc. 20-3 at 5). Abney was no longer Plaintiff's supervisor when he transferred to the first shift. (Doc. 20-6 at 2).

Immediately after Plaintiff's discipline related to the break room and transfer to the first shift, Plaintiff testified he reported Abney's comments to Tom Claud, Director of Human Resources, and Mike Patzke, Director of Operations. (Doc. 20-1 at 25, 27-28). Abney did not make any additional comments, sexual or otherwise, to Plaintiff after he transferred to the first shift in July 2014. (*Id*. at 38). Abney would, however, sometimes drive his truck by a table where Plaintiff was working, and he would look at Plaintiff and smile. (*Id*.). Additionally, occasionally Abney would walk into Plaintiff's work area, and Plaintiff felt he was looking to see what Plaintiff was doing. (*Id*.). According to Plaintiff, Abney had no other reason to come to Plaintiff's work area other than to taunt him.[5] (*Id*.). Plaintiff also believed Abney told other maintenance workers to mess up his work table when Plaintiff was not there. (*Id*.).

In January 2015, Plaintiff was injured when he fell off a forklift. (Doc. 20-1 at 31). Plaintiff never worked for SLT again after February 4, 2015, because of his

[5] Abney testified he visited all areas of the mill, including the first shift changeover crew area, for normal maintenance activities. (Doc. 20-6 at 3).

injury and has been unable to work at all since that date. (*Id*. at 32-33). In February 2015, Plaintiff went on short-term disability, and beginning February 23, 2015, Plaintiff took leave under the Family and Medical Leave Act ("FMLA"). (*Id*. at 33; Doc. 20-2 at 52-62). On July 16, 2015, SLT terminated Plaintiff after he exhausted his short-term disability and FMLA leave and was not able to return to work.[6] (Doc. 20-3 at 5; Doc. 20-2 at 63). The termination letter stated if Plaintiff became able to return to work, he could reapply for employment with SLT. (Doc. 20-2 at 63). Plaintiff has not been able to return to work, however, and applied for Social Security disability benefits. (Doc. 20-1 at 14-15).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2015. (Doc. 20-2 at 66-67). On October 6, 2015, the EEOC dismissed Plaintiff's charge and notified him of his right to sue. (Doc. 1-1 at 1). Plaintiff timely filed his complaint on January 4, 2016. (Doc. 1).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

[6] Plaintiff testified he wanted to come back to work and had a doctor's appointment scheduled to receive an epidural when he received his termination letter. (Doc. 20-1 at 31). Plaintiff never received the epidural. (*Id*). Citing this testimony, Plaintiff disputes Defendant's statement of fact he was unable to return to work but a desire to return to work and the physical ability to return are two different things. (Doc. 26 at 4).

material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at 249.

**III. DISCUSSION**

Plaintiff voluntarily dismissed his claims for age discrimination and retaliation. (Doc. 26 at 1). The only claim remaining is for sexual harassment.

(*Id*.). Defendant contends it is entitled to summary judgment on Plaintiff's sexual harassment claim for two alternative reasons. First, Defendant contends Plaintiff's claim is time barred because he filed his EEOC charge more than 180 days after the alleged harassment by Abney. (Doc. 19 at 15-16; Doc. 28 at 6-7). Second, Defendant argues the alleged harassment was not based on gender, nor sufficiently severe and pervasive to alter the terms and conditions of plaintiff's employment and create an abusive working environment. (Doc. 19 at 16-21; Doc. 28 at 4-6, 8-9). The court addresses each argument below.

**A. Exhaustion of Administrative Prerequisites to Suit**

Before a plaintiff may pursue a Title VII discrimination claim, he first must exhaust his administrative remedies. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). To exhaust his administrative remedies, the plaintiff must file a timely charge of discrimination with the EEOC. *Id.* (citing 42 U.S.C. § 2000e–5(b)). To be timely within a non-deferral state, such as Alabama, the charge must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e–5(e)(1); *Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1178 (11th Cir. 2005).

The Supreme Court addressed the operation of Title VII's timely filing requirement in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (the Court considered "whether, and under what circumstances, a Title VII plaintiff

may file suit on events that fall outside [the] statutory time period."). The Court determined the analysis of whether a claim is timely depends on the type of claim at issue. *Id*. at 105. Disparate treatment and retaliation claims, classified as "discrete acts of discrimination or retaliation," are treated differently from claims alleging a hostile working environment. *Id*.

In cases involving "discrete acts of discrimination," such as "termination, failure to promote, denial of transfer, or refusal to hire," the timely filing requirement creates an absolute bar to recovery. *Id*. at 114; *Ledbetter*, 421 F.3d at 1178. Discrete actions are easy to identify and each individual act of discrimination constitutes a separate unlawful employment practice that occurs on the day that it happens. *Morgan*, 536 U.S. at 109. Thus, with a discrete act, there is no issue about when the act occurred because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113; *Ledbetter*, 421 F.3d at 1179 (with discrete actions "there is no issue about when, in the language of the statute, the 'alleged unlawful employment practice occurred.'") (quoting 42 U.S.C. § 2000e-5(e)(1)). As a result, if employment actions identified as "discrete discriminatory acts" are time barred, they are not actionable, even if related to acts timely filed. *Morgan*, 536 U.S. at 114.

The timeliness of a hostile environment charge, however, is approached differently. The *Morgan* Court reasoned:

> [h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

*Id*. at 115 (internal citations omitted). In making the determination whether a hostile work environment claim has been timely filed, "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117; *see also Shields v. Fort James Corp.*, 305 F.3d 1280, 1282-83 (11th Cir. 2002) ("[a]n allegation that an employer has allowed a racially hostile work environment to prosper embodies a single violation of an employee's right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship' and, therefore, should be reviewed in its entirety if any part of this allegation falls within the statute of limitations period."). The question, therefore, becomes what constitutes an "act contributing to the claim." *Morgan,* 536 U.S. at 117. "A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work

environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120.

Plaintiff filed his charge of discrimination on May 8, 2015. (Doc. 20-2 at 66-67). Plaintiff contends Abney made inappropriate comments, spread rumors about him, and touched him on the shoulder between early 2014 and July 2014. (Doc. 20-1 at 26, 38). However, Plaintiff testified Abney did not say anything else to him or touch him after July 2014. (Doc. 20-1 at 38). Instead, Plaintiff stated that after July 2014, Abney (1) sometimes drove his truck by a table where Plaintiff was working and would look at Plaintiff and smile; (2) occasionally walked into Plaintiff's work area, and Plaintiff felt he was looking to see what Plaintiff was doing; and (3) told other maintenance workers to mess up his work table when Plaintiff was not there.[7] (*Id*.).

Plaintiff's claim for sexual harassment centers on the comments made by Abney from early 2014 until July 2014. These allegations are clearly outside the 180 day statutory window. Plaintiff argues, however, Abney's actions after July 2014 through December 2014, are acts contributing to the claim and, therefore, all his allegations may be considered by the court in determining whether his claims fall within the statutory time period. (Doc. 26 at 11-12). The court disagrees. The

[7] Plaintiff did not have any evidence Abney told employees to mess up his work station but testified he merely believed Abney instructed others to do so when he was absent from work. (Doc. 20-1 at 38).

conduct occurring after July 2014 does not contribute to his claim because it is simply not harassment at all. Abney never spoke to Plaintiff after July 2014. The everyday observation of other employees in the workplace is a "natural and unavoidable consequence when people work together." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999). Because the conduct after July 2014 is not "part of the same actionable hostile work environment practice," Plaintiff's claim for sexual harassment is time barred as a matter of law. *Morgan*, 536 U.S. at 120.

**B. Plaintiff Cannot Establish a Hostile Environment Claim**

Even assuming Plaintiff's hostile environment claim was not barred by his failure to timely exhaust his administrative prerequisites to suit, Defendant is entitled to summary judgment on Plaintiff's hostile environment claim. Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A hostile work environment claim under Title VII is established upon proof "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). To establish a claim he was subjected to a sexually hostile work environment, Plaintiff must show (1) he belongs to a

protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as gender; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the hostile environment under a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002); *Mendoza*, 195 F.3d at 1245. Defendant does not dispute Plaintiff belongs to a protected group or the alleged offensive comments were unwelcome. Rather, Defendant asserts Plaintiff failed to present substantial evidence to support findings in his favor on the third and fourth elements – whether the harassing conduct was based on gender and whether it was sufficiently severe or pervasive. (Doc. 19 at 16-21; Doc. 28 at 4-6, 8-9). The court agrees with Defendant.

The court does not have to address the trickier issue, whether heterosexual male-on-male harassment is because of gender, because Plaintiff failed to present substantial evidence that Abney's alleged harassing conduct was sufficiently severe or pervasive to alter the terms or conditions of his employment. This requirement, as defined by the Supreme Court, contains both an objective and a subjective component. *See Harris*, 510 U.S. at 21–22. To be actionable, the behavior must result in both an environment "that a reasonable person would find

hostile or abusive" and an environment that the victim "subjectively perceive[s] . . . to be abusive." *Id.* Defendant argues Plaintiff cannot carry his burden with respect to the objective component, and the court agrees.

In evaluating the objective severity of the harassment, the court considers: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citation omitted). The court looks to the totality of the circumstances instead of requiring proof of each factor individually. *Harris*, 510 U.S. at 23.

Plaintiff contends from early 2014 until July 2014, Abney made inappropriate comments and sometimes touched him on the shoulder. (Doc. 20-1 at 26, 36, Doc. 20-2 at 67). He contends the comments were on an almost daily basis. (*Id.*). Looking at Plaintiff's allegations in their totality, the alleged comments, although vulgar and crude, do not amount to a sexually hostile work environment. *Compare Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (holding that conduct was not sufficiently severe or pervasive where an African-American plaintiff "saw his coworkers wear the Confederate flag on a regular basis," "saw racist graffiti in the men's restroom that he used on a daily basis," "heard people say the slur 'nigger,' but only a 'few times,'" and heard

about a noose being left in the breakroom, though he did not see it himself) and *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 578-79 (11th Cir. 2000), overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (holding that conduct was not sufficiently severe or pervasive where a supervisor allegedly touched plaintiff's hand and thigh, lifted her dress hem, repeatedly asked her to lunch, told her she was beautiful, stared at her, and called her home on numerous occasions at night and asked about personal matters) *with Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding conduct was sufficiently severe or pervasive where the female plaintiff's supervisor "frequent[ly]" tried to get plaintiff to date him using "many direct as well as indirect propositions for sex" including "following her into the restroom," "repeated attempts to touch her breasts, place his hands down her pants, and pull off her pants," and "enlisting the assistance of others to hold her while he attempted to grope her") *and Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276-76 (11th Cir. 2002) (severe and pervasive conditions existed where co-workers called plaintiff racially offensive names three to four times per day). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not tantamount to a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988). A hostile work environment is created only "[w]hen the workplace is permeated with discriminatory intimidation,

ridicule, and insult." *Harris*, 510 U.S. at 21. The allegations here simply do not rise to the severe and pervasive requirement as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendant Southland Tube, Inc. is entitled to judgment as a matter of law on all the claims asserted in Plaintiff's complaint. As such, Defendant's motion for summary judgment (Doc. 18) is due to be granted. A separate order will be entered.

**DONE** this 2nd day of March, 2018.

Staci G. Cornelius

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE